Albert Cornell et al., appellants,

*v.*

Michael Levinson et al., respondents.

On appeal from a decree of the chancellor, on the following opinion.

*Mr. W. M. Scudder* and *Mr. C. F. Hill,* for appellants.

*Mr. Samuel Kalisch,* for respondents.

The controversy between the parties to this suit is in reference to $1,498.82, paid into the supreme court of this state by the sheriff of Essex county, or still held by him, as the proceeds of the sale (less his fees) of the goods of Herman Lissner, of Newark, under an execution issued on a judgment for $8,315.83, recovered against him on *cognovit* in that court by Michael Levinson, June 17th, 1880. The sale took place at Newark on the 28th day of June and 8th of July, 1880, to which latter day an adjournment was made by the sheriff, in view of a claim of property made as to some of the goods against which Levinson indemnified him. The complainants are judgment-creditors of Lissner. The judgment of Cornell & Amerman is for $184.75, and was recovered June 21st, 1880, in the second district court of Newark; that of Harbison, Shiner & Loder was recovered in the first district court of Newark, June 23d, 1880, for $133.82. Executions were issued on both these judgments, and that which was issued on Cornell & Amerman's was levied on the goods on the 21st of June, 1880, and the other two days afterward—both before the first day of sale. Levinson's suit was begun by summons, returnable June 14th, 1880, the declaration was filed therein on the 16th, the judgment entered on a *cognovit* the next day, and a levy under it made on the 21st. The goods were a stock of millinery and fancy goods. Levinson is the brother-in-law of Lissner. Between the levy under Levinson's execution and the sale, Lissner, by consent of Levinson, continued in possession of the goods and went on to sell them as he had done before the levy. At the sale the goods were put up in large lots. One Henry Obendorfer, who at the time was assisting Levinson's firm (L. Levinson & Co.), of the city of New York, in part of their business (he appears to have been a man of means), became the purchaser of all or very nearly all the goods, through bids for himself or others who bought for him, or whose purchases he took. If there was any exceptance it was very insignificant. After the sale, Obendorfer claimed to be the owner of the property, and Lissner and his wife (who is Levinson's sister) continued in possession of the store, and under an agreement with Obendorfer, carried on the business with the goods, and others

Cornell *v.* Levinson.

subsequently purchased, until the latter part of February, 1881, when Obendorfer removed the stock from Newark. By the agreement between Lissner and his wife and Obendorfer, the former were to receive for their compensation $25 per week ($15 for Lissner and $10 for his wife), and five per cent. on the amount of the sales.

The complainants seek to restrain Levinson from receiving the money derived from the sale of the goods on the ground that his judgment was fraudulent, and was intended as a means of protecting Lissner's property from his creditors.

The proof of the indebtednesss for which the judgment was confessed is clear. It was for money lent by Levinson to Lissner, and money paid by the former for the latter and interest, and the price (comparatively a very small amount) of goods sold and delivered by Levinson to Lissner. It is urged on behalf of the complainants, however, that the checks for the money alleged to have been lent and paid were given not by Levinson, but by his firm, L. Levinson & Co., and that the goods, the price of which, as before stated, constitutes a very small part of the debt, were the property of that firm, or in other words, that the indebtedness for which the judgment was recovered was not due from Lissner to Levinson, but to his firm. But it is quite manifest that the debt was in fact due to Levinson. Though the firm furnished the money and goods, they were furnished by Levinson, who was to account to them therefor. It is also urged that a claim of $500, which constituted part of the indebtedness, was for money lent, not to Lissner, but to another person, to be lent by him to Lissner. It appears, however, that the loan was, in fact, to Lissner, and that he was the true debtor and Levinson the real creditor. Objections are made to other items of Levinson's claim, but the evidence in regard to them by no means leads to the conclusion that they are not claimed in good faith, nor, indeed, that they are just debts from Lissner to Levinson. There is no reason to doubt the *bona fides* of the claim for which Levinson's judgment was recovered.

The complainants insist, also, that the conduct of Levinson, in leaving the goods in the hands of Lissner after the levy, is evi-

dence of fraud. But it is proved that the latter accounted to the former for the money received from the sales during the few days which intervened between the levy and the sale, and paid to him $574 as the net proceeds. And so, too, although after the sale Lissner continued in possession, it was under an express agreement with Obendorfer, for the services of him and his wife in the employ of the latter for wages explicitly agreed upon, and the business appears to have been, in fact, conducted by Lissner and his wife for Obendorfer, on his credit and on his account, after the sheriff's sale. The circumstances relied upon by the complainants as proof of fraud do not lead to the conviction that the Levinson judgment was fraudulent, or was entered with a fraudulent design or purpose. It appears, undeniably, that Levinson had from time to time lent to Lissner, and advanced and paid for him large sums of money from a period as early as 1873, when he advanced $10,000 for him in a business in Illinois. The moneys lent and paid, for which the judgment was recovered, were advanced between January 5th, 1878, and March 8th, 1880, and they amounted altogether to $9,374.85 (the claim, with the amount of the price of the goods sold, was $9,385.85), and Lissner had paid only $1,149.63, leaving a balance of $8,236.22. Of the money lent, $1,400 were lent January 2d, 1880, in two loans—one of $400 and the other of $1,000; $1,000 on the 7th of the same month, and $600 on the 20th. When application was made to Levinson by Lissner, in March following, for another loan of $500, he appears to have refused, but subsequently yielded and lent him the money. Lissner's books contain evidence of the indebtedness, and the checks on which the money was paid are produced. Lissner's bank-book shows that he made a deposit to his credit of the sum of $1,000 on the 2d of January, 1880, and another one of the same amount on the 7th. There is no ground on which Levinson should be restrained from receiving the proceeds of the goods, which are not enough to pay one-sixth of the amount of the judgment, and not enough to pay that part of it about which there is no room for controversy, except as to who is the real creditor, Levinson or his firm, which has been considered in a

Clark *v.* Bradshaw.

previous part of this opinion. The bill will be dismissed, with costs.

PER CURIAM.

This decree unanimously affirmed for the reasons given by the chancellor.